UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

November 30, 2017

MEMORANDUM TO COUNSEL RE:    Janvier S. Gordon v. Sterling Jewelers, Inc.
                             Civil Action No. GLR-17-559

Dear Counsel:

Pending before the Court is Defendant Sterling Jewelers, Inc.'s ("Sterling") Motion to Dismiss with Prejudice, or Alternatively, Stay Proceedings Pending Submission to Mandatory Arbitration (ECF No. 3), which the Court will construe as a Motion to Dismiss or Stay and Compel Arbitration.[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Sterling's Motion.

Plaintiff Janvier S. Gordon is an African-American male who was a store manager and full-time sales representative for Sterling at locations in Delaware, Maryland, and Texas. (Compl. ¶¶ 1, 12, 15, 41, ECF No. 1).[2] Prior to starting at Sterling in August 2013, Gordon signed an agreement to submit employment-related claims to Sterling's RESOLVE program, which culminates in mandatory arbitration (the "Arbitration Agreement" or "Agreement"). (Id. ¶ 11; Def.'s Mem. Supp. Mot. to Dismiss Ex. A ["Arbitration Agmt."], ECF No. 3-3). While a manager at Sterling's Frederick, Maryland store, Gordon's staff racially and sexually harassed him on an ongoing basis. (Compl. ¶¶ 19–23). When Gordon reported these incidents of harassment to his managers, they counseled him, demoted him, and denied him relocation expenses when he was transferred to a Texas store. (Id. ¶ 82). Because of these actions, he resigned in January 2015. (See id. ¶¶ 56–58). In June 2015, Gordon filed a claim with the RESOLVE program. (Gordon Decl. ¶ 20, ECF No. 4-1). Gordon also filed a claim with the Equal Employment Opportunity Commission ("EEOC") at an unspecified time and received his right to sue letter on November 30, 2016. (Compl. ¶ 5).

On February 26, 2017, Gordon sued Sterling, alleging one count of race discrimination, one count of sex discrimination, and one count of retaliation all in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2012). (ECF No. 1). Gordon seeks monetary damages and declaratory relief. (Compl. ¶ 83). Sterling filed its Motion to Dismiss with Prejudice, or Alternatively, Stay Proceedings Pending Submission to Mandatory Arbitration on April 21, 2017. (ECF No. 3). On May 5, 2017, Gordon

---

[1] Although Sterling does not expressly caption its Motion as a Motion to Compel Arbitration, in its Motion and accompanying Memorandum, Sterling states that "the Court should compel Gordon" to arbitrate his dispute. (Def.'s Mem. Supp. Mot. Dismiss ["Def.'s Mem.] at 11, ECF No. 3-1). Accordingly, the Court will construe Sterling's Motion as a Motion to Dismiss or Stay and Compel Arbitration.

[2] Unless otherwise noted, the facts outlined here are set forth in Gordon's Complaint (ECF No. 1). To the extent the Court discusses facts that Gordon does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Gordon. The Court will address additional facts when discussing applicable law.

filed his Opposition. (ECF No. 4). On May 31, 2017, Sterling filed its Reply. (ECF No. 9). Gordon filed his Surreply on June 27, 2017. (ECF No. 12). Sterling filed its Final Reply on June 30, 2017. (ECF No. 15).

The Federal Arbitration Act (the "FAA") codifies a strong federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). As a result, the FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable," unless there is a basis to revoke the contract. 9 U.S.C. § 2 (2012). Under the FAA, a court may compel arbitration if the parties agreed in writing to arbitrate the dispute. Bey v. Midland Credit Mgmt., Inc., No. GJH-15-1329, 2016 WL 1226648, at *3 (D.Md. Mar. 23, 2016) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002)). A court decides as a matter of contract whether the parties agreed to arbitrate a particular dispute. Id. (quoting Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998)).

Motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment." Shaffer v. ACS Gov't Servs., Inc., 321 F.Supp.2d 682, 683 (D.Md. 2004). If the parties dispute the validity of an arbitration agreement, motions to compel arbitration "are treated as motions for summary judgment." Bey, 2016 WL 1226648, at *4 (quoting Rose v. New Day Fin., LLC, 816 F.Supp.2d 245, 251 (D.Md. 2011)). In this case, Gordon contests the Arbitration Agreement's enforceability. Accordingly, the Court will review Sterling's Motion using the summary judgment standard. See Shaffer, 321 F.Supp.2d at 684.

Under this standard, a court will grant a motion to compel arbitration "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Bey, 2016 WL 1226648, at *4 (quoting Fed.R.Civ.P. 56(a)). In considering the motion, a court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor." Id. (alteration in original) (quoting Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002)). But, as in all cases, the court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" Id. (quoting Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003)).

Sterling contends that all of Gordon's claims are subject to the Arbitration Agreement, and Gordon does not dispute this contention.[3] Instead, Gordon argues that he should not be required to arbitrate his claims because Sterling materially breached the Agreement and breached the covenant of good faith and fair dealing. Gordon also argues that the Arbitration Agreement is unconscionable.

**Material Breach**

Gordon asserts that Sterling materially breached the Arbitration Agreement by choosing to arbitrate in Texas. Courts have defined a material breach as one that "violates a term essential to the purpose of the contract." Price v. KNL Custom Homes, Inc., 28 N.E.3d 640, 651 (Ohio Ct. App. 2015); see also Sachs v. Regal Sav. Bank, 705 A.2d 1, 4 (Md.Ct.App. 1998), aff'd sub nom. Regal Sav. Bank,

---

[3] The relevant provision of the Arbitration Agreement provides that claims "regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, . . . claims under . . . Title VII of the Civil Rights Act of 1964" are subject to arbitration. (Arbitration Agmt.).

2

FSB v. Sachs, 722 A.2d 377 (Md. 1999).[4]  Here, the Arbitration Agreement provides that "[a]bsent any undue hardship as determined by arbitrator, the arbitration shall occur near where Employee worked for Sterling."[5]  (Arbitration Agmt.).  Gordon worked for Sterling in Delaware, Maryland, and, most recently, Texas, making Texas a viable arbitration location under the terms of the Agreement.  Thus, the Court concludes that there is no genuine dispute of material fact that Sterling did not materially breach the Agreement.

**Covenant of Good Faith and Fair Dealing**

Gordon claims that Sterling breached the covenant of good faith and fair dealing when it unilaterally selected Midland, Texas as the arbitration location in an attempt to make arbitration prohibitively expensive, thereby forcing Gordon to withdraw his claim.  The covenant of good faith and fair dealing requires a party to "do everything that the contract presupposes they will do to accomplish its purpose."  Questar Builders, Inc. v. CB Flooring, LLC, 978 A.2d 651, 675 (Md. 2009) (quoting Photovest Corp. v. Fotomat Corp., 606 F.2d 704, 728 (7th Cir. 1979)).  But the duty of good faith and fair dealing does not "interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise."  E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 184 (4th Cir. 2000).  Rather, the only obligations required are ones "inherent in expressed promises."  Id.

As discussed above, the Agreement provides that "the arbitration shall occur near where Employee worked for Sterling" absent the arbitrator finding undue hardship.  (Arbitration Agmt.).  Therefore, Sterling's only obligation under the Agreement was to arbitrate near where Gordon worked for Sterling—Texas—unless the arbitrator determined otherwise.  Indeed, Sterling's RESOLVE coordinator identified Midland, Texas as the location for arbitration because it was Gordon's most recent work location. (Gordon Decl. Ex. 1 at 4).  Gordon withdrew from arbitration before the parties selected an arbitrator, and therefore he never argued to the arbitrator that arbitration in Texas caused him undue hardship.  (See id. at 5).  Although it may seem "logical or wise" that Gordon should be permitted to arbitrate in a more cost-effective location without the arbitrator's hardship determination, those were not the terms that Gordon and Sterling agreed to.  See E. Shore Mkts., 213 F.3d at 184.  Thus, the Court

---

[4] A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. See In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988). When determining the "construction, validity, enforceability, or interpretation of a contract," Maryland courts apply the law of the jurisdiction in which the contract was made. Cunningham v. Feinberg, 107 A.3d 1194, 1204 (Md. 2015) (citing Lewis v. Waletzky, 31 A.3d 123, 129 n.8 (Md. 2011)). As a general rule, however, parties to a contract may agree to the law that will govern their agreement, including the validity of the contract. Restatement (Second) of Conflict of Laws § 187 (1971). Here, the parties cite to Maryland law in their briefs, Gordon signed the Arbitration Agreement in Delaware, and the Agreement contains a choice-of-law provision which dictates the application of Ohio law, (Arbitration Agmt.). Because the Court concludes that the outcome would be the same under Maryland, Delaware, or Ohio law, the Court declines to choose which jurisdiction's law applies. See Deuley v. DynCorp Int'l, Inc., 8 A.3d 1156, 1161 (Del. 2010) (quoting Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006)) (If the result would be the same under the respective jurisdictions, the court "should avoid the choice-of-law analysis altogether.").

[5] In arguing that Sterling breached the Arbitration Agreement, Gordon repeatedly quotes from a brochure for the RESOLVE program, which states that arbitration will take place at "a mutually convenient time and location." (Def.'s Mem. Ex. B; Pl.'s Opp'n Mot. Dismiss Stay ["Pl.'s Opp'n"] at 1, 5, 11, 13, ECF No. 4; Pl.'s Surreply at 1). The Court notes that the only signed agreement between the parties is the Arbitration Agreement, and, therefore, only its language controls.

concludes that there is no genuine dispute of material fact that Sterling did not breach the covenant of good faith and fair dealing.

**Unconscionability**

Gordon argues that the Arbitration Agreement is unenforceable because it is unconscionable. Gordon contends that the Agreement is procedurally unconscionable because it is a contract of adhesion. A contract of adhesion is "one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." Walther v. Sovereign Bank, 872 A.2d 735, 746 (Md. 2005) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. b). Contracts of adhesion are not per se unconscionable. Id. They must be both procedurally and substantively unconscionable to be unenforceable. Id. at 746–47; Vanyo v. Clear Channel Worldwide, 808 N.E.2d 482, 486 (Ohio 2004).

Procedural unconscionability refers to how the contract was made. Certain elements of the bargaining process may reflect procedural unfairness, such as "overwhelming bargaining strength or use of fine print or incomprehensible legalese." Doyle v. Finance America, LLC, 918 A.2d 1266, 1274 (Md. 2007) (quoting 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1999)). Assessing procedural unconscionability requires the Court to consider whether each party had "a reasonable opportunity to understand the terms of the contract" or whether important terms were "hidden in a maze of fine print." Vanyo, 808 N.E.2d at 486 (quoting Ohio Univ. Bd. of Trustees v. Smith, 724 N.E.2d 1155, 1161 (Ohio 1999)); see also Walther, 872 A.2d at 744 (quoting Carlson v. General Motors Corp., 883 F.2d 287, 296 n.12 (4th Cir. 1989) ("[P]rocedural unconscionability deals with the process of making a contract—'bargaining naughtiness' (for instance, 'Just sign here; the small print on the back is only our standard form.'")).

Here, the Arbitration Agreement is a contract of adhesion because Sterling would not have employed Gordon had he not signed it. But the two-page Agreement states that "[a]bsent an undue hardship as determined by arbitrator, the arbitration shall occur where Employee worked for Sterling." (Arbitration Agmt.). These terms are not in legalese, fine print, or hidden in such a way that warrants finding the Agreement procedurally unconscionable. See Doyle, 918 A.2d at 1274; Vanyo, 808 N.E.2d at 486. Gordon also demonstrated his understanding of the Agreement by filing claims. Moreover, courts considering the same Arbitration Agreement at issue in this case have held that it is not procedurally unconscionable. See, e.g., McGilley v. Sterling Jewelers, Inc., No. 12-5217 JBS-KMW, 2013 WL 1163983, at *6 (D.N.J. Mar. 18, 2013); Smith v. Sterling Jewelers, Inc., No. 5:12CV2675, 2013 WL 271813, at *4 (N.D. Ohio Jan. 24, 2013). Thus, the Court concludes that the Arbitration Agreement is not procedurally unconscionable.

Gordon also maintains that the Arbitration Agreement is substantively unconscionable due to its one-year limitation for bringing claims against Sterling and because such a limitations period effectively bars statutory remedies.[6] Substantive unconscionability requires the court to examine whether the terms of the agreement are commercially reasonable. See Walther, 872 A.2d at 744; Hayes v. Oakridge Home, 908 N.E.2d 408, 414 (Ohio 2009). In determining whether a contract is substantively unconscionable, the court considers the fairness of the terms, including whether they are "unreasonably favorable to the more

---

[6] Gordon also argues that the Arbitration Agreement as applied by Sterling is substantively unconscionable because it renders the costs of arbitrating his claim in Texas prohibitive—essentially the same arguments he advanced addressing Sterling's purported material breach. Again, under the Agreement whether arbitration in Texas presented an undue hardship for Gordon is an issue for the arbitrator, not the Court. Accordingly, the Court declines to consider Gordon's arguments regarding the financial hardship of arbitrating in Texas.

powerful party." Freedman v. Comcast Corp., 988 A.2d 68, 85 (Md. 2010) (quoting Walther, 872 A.2d at 743); see also Hayes, 908 N.E.2d at 414. Parties may agree to a shorter limitations period "so long as the period is not unreasonably short." In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 287 (4th Cir. 2007).

Here, the limitations period is one year, and courts have often found contractual limitations periods of one year or less—including the one in the Arbitration Agreement—to be reasonable. In re Cotton Yarn Antitrust Litig., 505 F.3d at 287 (collecting cases); Smith, 2013 WL 271813, at *4 (one-year limitation on claims does not render Sterling's RESOLVE program unconscionable). Additionally, the one-year limitations period is longer than the applicable 180- or 300-day EEOC period, foreclosing any conclusion that it is unreasonably short. The one-year limitations period also does not infringe on Gordon's statutory rights because it does not preclude administrative filings, and the EEOC can still adjudicate disputes against Sterling on its own. See EEOC v. Waffle House, 534 U.S. 279, 291–92 (2002). Thus, the Court concludes that the Arbitration Agreement is not substantively unconscionable. Accordingly, the Agreement is not unenforceable because it is unconscionable and Gordon must arbitrate his claims.

Because Gordon's claims are subject to arbitration, Sterling argues that the court should dismiss them with prejudice as required by the FAA. The Fourth Circuit in Choice Int'l Hotels, Inc. v. BSR Tropicana Resort, Inc., held, "[n]otwithstanding the terms of § 3 [of the FAA] . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." 252 F.3d 707, 709–10 (4th Cir. 2001). Courts in the District of Maryland have uniformly dismissed cases where all of the claims are arbitrable. See, e.g., Bey, 2016 WL 1226648, at *5 (granting defendant's motion to dismiss when it moved to stay or in the alternative dismiss, holding that "because all of the Plaintiff's claims . . . are subject to arbitration, dismissal of this action is appropriate"). In this case, because all of Gordon's claims are subject to arbitration, "no useful purpose will be served by staying the pertinent proceedings pending arbitration." Taylor v. Santander Consumer USA, Inc., No. DKC 15-0442, 2015 WL 5178018, at *7 (D.Md. Sept. 3, 2015) (quoting In re Titanium Dioxide Antitrust Litig., 962 F.Supp.2d 840, 856 (D.Md. 2013)). Accordingly, the Court will grant Sterling's Motion to Dismiss.

For the foregoing reasons, Sterling's Motion to Dismiss with Prejudice, or Alternatively, Stay Proceedings Pending Submission to Mandatory Arbitration (ECF No. 3) is GRANTED. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly and CLOSE this case.

Very truly yours,

/s/
_____
George L. Russell, III
United States District Judge